IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUANN DUNKINSON | : |
| | : |
| | : 3:10-cv-06489-FLW -LHG |
| v. | : |
| | : Hearing Date: April 4, 2011 |
| CITIGROUP INC. (d/b/a) | : |
| THD/CITIBANK USA, EXPERIAN, | : |
| TRANSUNION, OXFORD | : |
| COLLECTION AGENCY, INC. d/b/a | : |
| OXFORD MANAGEMENT SERVICES, | : |
| ANTONIO LAMEIRAS, | : |

BRIEF OF DEFEDANT CITIBANK (SOUTH DAKOTA), N.A.
(INCORRECTLY SUED AS CITIGROUP INC. d/b/a THD/CITIBANK USA)
IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT.

I.     INTRODUCTION

The entire Complaint filed by Plaintiff Luann Dunkinson ("Plaintiff") is premised on the erroneous legal theory that, because a divorce court previously ordered that Plaintiff's ex-husband should be responsible for a joint credit card account issued in both of their names, the third-party creditor for the account (defendant Citibank (South Dakota), N.A. ("Citibank"))[1] should subsequently be precluded from furnishing information reflecting that Plaintiff is responsible for

---

[1] Although Plaintiff names Citigroup Inc. as the defendant, Citigroup Inc. does not issue credit card accounts.  Rather, Home Depot credit card accounts, like the account alleged in the Complaint, are issued by Citibank.

1

the Account. Put differently, Plaintiff takes the position (contrary to established law) that a third-party creditor is somehow bound by the ruling of a family law court as to the allocation of pre-divorce joint debts, even when the creditor was not a party to such case.

As discussed below, because Plaintiff's underlying legal theory is wrong, all of the claims asserted in the Complaint fail as against Citibank. Plaintiff cannot show that Citibank furnished any "inaccurate" information regarding the credit card account at issue because Citibank was never obligated to remove Plaintiff from the Account based on the divorce decree. Moreover, as confirmed by several recent decisions from this Court, Plaintiff's state-law claims (all of which are based on Citibank's alleged furnishing of information to credit reporting agencies ("CRAs")) fail as a matter of law based on federal preemption under 15 U.S.C. § 1681t(b)(1)(F) of the Fair Credit Reporting Act ("FCRA").

Simply put, while Plaintiff may have a claim against her ex-husband for failing to pay the Account pursuant to the divorce court's order (which Plaintiff conveniently fails to attach to the Complaint), she does not have any claim against Citibank for furnishing credit information listing her as responsible for the Account. Accordingly, Citibank respectfully requests that the Court grant the instant Motion and dismiss Plaintiff's Complaint with prejudice and without leave to amend.

## II.     ALLEGATIONS OF THE COMPLAINT

As alleged in the Complaint, Plaintiff filed this case following her discovery in January 2010 of a derogatory Home Depot credit card account (the "Account") showing on her credit report. Complaint, ¶¶ 10, 11. Plaintiff concedes that she "opened a **joint** Home Depot/Citibank credit card account with her ex-husband, Antonio Lameiras, in 1997." Complaint, ¶ 12. Thus, Plaintiff does **not** dispute that the Account at issues was opened jointly in her name.

Plaintiff goes on to allege that, "[f]ollowing her divorce on June 7, 1999, over 11 years ago, the divorce Judge Hon. Wendel E. Daniels ordered the joint account to be closed, with Plaintiff's ex-husband, Defendant Antonio Lameiras, responsible for any remaining payments on the account. The Order further directed that all joint accounts were to be closed and all credit cards associated with those accounts were to be destroyed." Complaint, ¶ 12. Tellingly, Plaintiff does not allege in the Complaint (nor can she) that Citibank, as a third-party creditor, was a party to the divorce proceeding, or that Citibank (or any other creditor) was given prior notice of the hearing prior to the order being issued. In fact, Plaintiff's Complaint is completely silent as to whether Citibank was ever informed of the divorce prior to the alleged order being issued.

Plaintiff maintains that she "was not aware that the Home Depot credit card account was still in her name 10 years after the divorce, and was still being used by

3

her ex-husband fraudulently without her knowledge or consent"; but, Plaintiff also fails to allege that she made any attempt to contact Citibank in connection with the divorce proceeding to inquire about the Account. Indeed, Plaintiff offers no facts whatsoever to explain why Citibank, who was apparently was not a party to the divorce court proceeding, should be obligated to remove Plaintiff as a joint cardholder solely as a result of the divorce court's property-allocation order.

Plaintiff alleges that, in or about April 2010, she filed a motion in the divorce court seeking an order requiring her husband to pay the Account and to remove the Account from her credit reports. Complaint, ¶ 26. Plaintiff concedes, however, that (consistent with New Jersey state law), the divorce court "did not have jurisdiction to compel the debt collectors and credit bureaus to remove the debt from Plaintiff's reports." *Id.* ¶ 27. Once again, Plaintiff fails to attach a copy of the divorce court's most recent order (alleged as having been issued in May 2010).

Based on the foregoing, Plaintiff asserts claims against Citibank for: (1) violation of the FCRA; (2) violation of the Fair Credit Billing Act ("FCBA"); (3) intentional infliction of emotional distress ("IIED"); (4) defamation; and (5) negligence. All of Plaintiff's claims against Citibank are predicated on allegations that: (1) Citibank alleged furnished inaccurate information to CRAs regarding Plaintiff and the Account; (2) that Citibank refused to remove Plaintiff from the

Account; and (3) that Citibank refused to delete tradelines reflecting Plaintiff's responsibility for the Account after receiving notice of Plaintiff's dispute.

### III. ARGUMENT

#### A. LEGAL STANDARD ON A MOTION TO DISMISS.

The Supreme Court recently issued two cases clarifying the applicable standard for Rule 12(b)(6) motions to dismiss: *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The decisions in those cases abrogated the rule established in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Rather, the *Twombly* Court held that "[f]actual allegations must be enough to raise a right to relief above the speculative level" so as to "state a claim to relief that is plausible on its face." *Id*. 550 U.S. at 570, 127 S.Ct. 1955. The facts alleged must be sufficient enough to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Iqbal*, 129 S.Ct. at 1949; *see also, Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir.2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary

5

element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

The standard requires the Court to distinguish factual contentions from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949. And while the rule still stands that factual allegations in the Complaint must be taken as true for purposes of the motion, the district court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*

**B.    ALL OF PLAINTIFF'S CLAIMS FAIL BECAUSE, AS A MATTER OF LAW, CITIBANK WAS NOT REQUIRED TO REMOVE PLAINTIFF FROM THE ACCOUNT OR DELETE THE TRADELINE FROM PLAINTIFF'S REPORT BASED ON THE DIVORCE COURT'S ORDERS.**

As noted above, all of Plaintiff's claims are predicated on the assumption that Plaintiff was entitled to have her name removed from the Account and the Account removed from her credit report based on the divorce court's orders holding her ex-husband responsible for the Account.[2] No matter how one analyzes

---

[2] No matter how one analyzes Plaintiff's various claims, all of them are based on the contention that Citibank was/is not legally authorized to report Plaintiff as a joint cardholder for the Account. For example, even though Plaintiff's FCRA claim involves allegations of unreasonable investigations into Plaintiff's dispute, such claim must be premised on a contention that Citibank furnished inaccurate

6

Plaintiff's various claims, all are based on the contention that Citibank was/is not legally authorized to report Plaintiff as a joint cardholder for the Account. For example, even though Plaintiff's FCRA claim involves allegations that Citibank failed to conduct a reasonable investigation into Plaintiff's dispute, such claim is necessarily premised on a contention that the tradeline for the Account was inaccurate as to Plaintiff. *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) (holding that plaintiff has the burden to demonstrate factual inaccuracy, as well as other requirements, in order to proceed with a claim brought pursuant to 15 U.S.C. § 1681s-2(b)). As a result, Plaintiff's entire FCRA claim turns upon whether Citibank was legally obligated to request deletion of the Account tradeline from Plaintiff's credit report based on the divorce court's order. *See id.* ("We emphasize that, just as in suits against CRAs, a plaintiff's required showing is factual inaccuracy, rather than the existence of disputed legal questions. … Like CRAs, furnishers are "neither qualified nor obligated to resolve" matters that "turn[ ] on questions that can only be resolved by a court of law." (citations omitted).). Plaintiff's legal theory, however, is completely wrong.

---

derogatory information about Plaintiff. *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010). We emphasize that, just as in suits against CRAs, a plaintiff's required showing is factual inaccuracy, rather than the existence of disputed legal questions. Id. at 68. Like CRAs, furnishers are "neither qualified nor obligated to resolve" matters that "turn[ ] on questions that can only be resolved by a court of law." *Id.*

It is fundamental that a creditor's rights in a pre-divorce debt (e.g., the joint account) are superior to the rights of the spouses created by the divorce, provided (obviously) that the debt is created before the judgment of divorce. *See Freda v. Commercial Trust Co.*, 118 N.J. 36, 46, 570 A.2d 409 (1990). As recognized by the New Jersey Supreme Court in *Freda*:

> Under principles of equitable distribution, a wife may properly receive the marital home as part of her share of the marital assets. If the assets are subject to valid liens of the husband, they pass to the wife subject to those liens. ***The mere transfer of an asset from one spouse to another cannot extinguish the valid lien of a third party.*** 29 N.J. Practice (Cunningham & Fishler), *Law of Mortgages* § 131 (1975); *see also C.J.S. Mortgages* § 391 (1949). Nothing in the language or legislative history of the statutes pertaining to equitable distribution, N.J.S.A. 2A:34-23 and -24, supports a contrary conclusion.

*Freda,* 118 N.J. at 46, 570 A.2d 409. Other courts evaluating New Jersey law have reached similar conclusions. *See, e.g., In re Becker*, 136 B.R. 113, 118 (Bankr. D.N.J. 1992 (recognizing that transfers of any property interests pursuant to equitable distribution are subject to existing liens of third-party creditors and citing *Freda*); *In re Lawrence*, 237 B.R. 61, 78-79 (Bankr. D.N.J. 1999) (holding that where judgment creditor has rights that arise before judgment of divorce, the judgment creditor's rights in the property are superior to the spouse's interests); *see also Goncalvez v. Patuto*, 188 N.J.Super. 620, 629, 458 A.2d 146 (App. Div. 1983) ("a release of a defendant will release him only in respect of those claims by those parties as are actually or intended to be encompassed thereby"). Of course, this

8

black letter rule of law consistently has been upheld in jurisdictions across the country.[3]

Accordingly, because Plaintiff has no legal basis to demand her name being removed from the credit reporting of the Account, she has no legal basis to pursue her claims in this case. Therefore, the Motion should be granted and Plaintiff's entire Complaint dismissed with prejudice as against Citibank.

---

[3] *In re Vann*, 113 B.R. 704 (Bankr. D. Colo. 1990); In re Stoops, 209 B.R. 1 (Bankr. M.D. Fla. 1997); *Grace v. Grace*, 326 Ark. 312, 930 S.W.2d 362 (1996) (court has no authority to provide that questionable debt is not enforceable by third party); *Boxley v. Boxley*, 77 Ark. App. 136, 142–143, 73 S.W.3d 19, 24 (2002) ("a judge has no authority to decide the validity of an obligation to a third party who is not a party to the divorce"); *Community Guardian Bank v. Hamlin*, 182 Ariz. 627, 898 P.2d 1005 (Ct. App. Div. 1 1995), corrected, (July 10, 1995) (holding that third-party creditors are not bound by the allocation of community debts in a divorce decree); *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 198 Ill. Dec. 620, 633 N.E.2d 82 (4th Dist. 1994); *Ellis v. Ellis*, 730 N.E.2d 201 (Ind. Ct. App. 2000) (trial court properly refused to order husband removed from car loan); First *Union Home Equity Bank, N.A. v. Bedford Loan and Deposit Bank*, 111 S.W.3d 892, 895 (Ky. Ct. App. 2003) (equitable distribution statute "operates only to establish property rights as between spouses in the event of divorce and does not operate to establish rights as between creditors regarding marital property"); *Swigart v. Gallagher*, 171 Mich. App. 382, 429 N.W.2d 913 (1988); *Universal Assurors Life Ins. Co. v. Hohnstein*, 243 Neb. 359, 500 N.W.2d 811 (1993); *In re Jasper-O'Neil*, 149 N.H. 87, 816 A.2d 989 (2003); *Bourdon v. Bourdon*, 119 N.H. 518, 403 A.2d 433 (1979); *Union Grove Mill. and Mfg. Co. v. Faw*, 103 N.C. App. 166, 404 S.E.2d 508 (1991) (creditors' lien attached to entireties property immediately after divorce granted and before court could adjust legal title as between parties); *Livingston v. Unis*, 659 A.2d 606 (Pa. Commw. Ct. 1995); *Kronz v. Kronz*, 393 Pa. Super. 227, 574 A.2d 91 (1990); *Prosser v. Pee Dee State Bank*, 295 S.C. 212, 367 S.E.2d 698 (1988); *Shelton v. Shelton*, 2003 WL 22511463 (Tex. App. Houston 1st Dist. 2003).

### C. ALL OF PLAINTIFF'S STATE LAW CLAIMS AGAINST CITIBANK (COUNTS III THROUGH V) ARE BARRED BASED ON FEDERAL PREEMPTION UNDER THE FCRA.

Plaintiff's state law claims for IIED (Count III), defamation (Count IV), and negligence (Count V), all are based on allegations that Citibank purportedly furnished inaccurate information regarding Plaintiff's joint Account and failed to investigate her disputes and remove her from the Account. Complaint, ¶¶ 65-79. Because all of these claims are premised on Citibank's duties as a furnisher of information under the FCRA, they are barred based on 15 U.S.C. § 1681t(b)(1)(F) of the FCRA. *See Bartley v. LVNV Funding, LLC*, 2010 WL 2629072 (D.N.J. June 28, 2010) (dismissing common law claims challenging the furnishing of credit information "because the FCRA expressly preempts state causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies." (internal quotations and citations omitted)); *Burrell v. DFS Services, LLC*, 2010 WL 4926704, at *12 (D.N.J. Dec. 6, 2010) (in case involving Plaintiff's counsel, holding that FCRA preempted state law claims against furnisher of information and that the FCRA's "admonishment leaves no room for state law claims against furnishers of information such as the ones Mr. Burrell asserts against Defendants, regardless of whether those claims are couched in terms of common law or state statutory obligations."); *Cosmas v. American Exp. Centurion Bank*, 2010 WL 4961641, at * 10 (D.N.J. Dec. 1, 2010) (holding that Section

10

1681t(b)(1)(F) of the FCRA barred negligence claim that was based on employer's furnishing of credit information to a credit bureau).

As noted above, the FCRA regulates the reporting and use of credit information, including with respect to furnishers of information. *See, e.g., Barkho v. Homecomings Financial, LLC*, 657 F.Supp.2d 857, 864-65 (E.D. Mich. 2009); *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 10-11 (D. Mass. 2004), aff'd, 2005 U.S. App. LEXIS 29462 (1st Cir. 2005). Section 1681s-2 sets forth the duties of furnishers of information, like Citibank. *See Sigler v. RBC Bank (USA)*, 712 F. Supp. 2d 1265 (M.D. Ala. May 10, 2010) ("Congress devised a regulatory structure which imposes duties upon commercial entities which furnish information to credit reporting agencies.[] These duties are set out in 15 U.S.C. § 1681s-2." (footnote omitted)).

The FCRA expressly preempts state law claims where, as here, such claims implicate conduct that the FCRA exclusively regulates:

> No requirement or prohibition may be imposed under the laws of any State – (1)  with respect to any subject matter regulated under – . . . (F)  section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, . . . .

15 U.S.C. § 1681t(b)(1)(F). As the recent trio of New Jersey federal District Court cases have consistently held, Section 1681t(b)(1)(F) of the FCRA makes clear that state law challenges to conduct falling within the FCRA's scope cannot be asserted, including state law tort claims based on the furnishing of credit

11

information. *See Bartley*, 2010 WL 2629072, at *4 (Hayden, D.J.); *Burrell*, 2010 WL 4926704, at *12 (DeBevoise, Sr. D.J.); *Cosmas*, 2010 WL 4961641, at * 10 (Wolfson, D.J.). Other courts across the country have reached similar conclusions. *Poulin v. The Thomas Agency*, 708 F.Supp.2d 87, 90 (D. Me. 2010) ("The majority of courts to have addressed this issue have found that FCRA preempts state law claims ….."); *Bartley v. LVNV Funding, LLC*, 2010 WL 2629072 (D.N.J. June 28, 2010) (dismissing common law claims challenging the furnishing of credit information "because the FCRA expressly preempts state causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies." (internal quotations and citations omitted)); *Forester v. Pennsylvania Higher Educ. Assistance Agency*, 2009 WL 3710517, *5 (C.D. Cal. Oct. 30, 2009) ("the most recent cases considering this issue have held that this section totally preempts 'all state statutory and common law causes of action which fall within the conduct proscribed by § 1681 s-2.'"); *Barkho*, 657 F.Supp.2d at 864-65 ("The Plaintiff's defamation claim appears to fit squarely within section 1681s-2 as it stems directly from the allegedly inaccurate credit reporting by the Defendant. As a result, the Court must dismiss the Plaintiff's defamation of credit claim."); *Knudson v. Wachovia Bank, N.A.*, 513 F. Supp. 2d 1255, 1259 (M.D. Ala. 2007) (holding that the provision "does not allow for state law prohibitions or requirements which relate to the responsibilities of furnishers of information to consumer reporting

agencies."). In view of the foregoing, because Plaintiff's state law claims are based on the furnishing of credit information by Citibank, such claims are barred by federal preemption under the FCRA.

**D.  PLAINTIFF'S FAIR CREDIT BILLING ACT ("FCBA") CLAIM FAILS TO STATE ANY CLAIM.**

The FCBA, which is part of the federal Truth-in-Lending Act, gives a consumer with a credit card a very specific right to require a credit card issuer to investigate and resolve certain types of alleged "billing errors" that may appear on monthly billing statements. 15 U.S.C. § 1666; 12 C.F.R. § 226.13.[4] If these billing error rules apply, the creditor is required to acknowledge receipt of the consumer's billing error notice, as well as investigate and respond to the notice, within specific time periods. *Id.* The billing error regulation also requires card issuers to follow certain rules relating to collection of disputed amounts, reporting disputed amounts to credit bureaus, and re-billing disputed amounts following the card issuer's investigation of the alleged billing error. *Id.*

Critically, however, a creditor's obligations under TILA and Reg. Z "are not triggered unless, within sixty days of transmitting a billing statement, it 'receives at the address disclosed under section 1637(b)(10) of this title' a written notice from

---

[4] Reg. Z, which implements TILA, including the FCBA, 12 C.F.R. Pt. 226, and its Official Staff Commentary, 12 C.F.R. Pt. 226, Supp. I (the "Commentary"), are binding on courts unless "demonstrably irrational." *Ford Motor Credit Co. v.*

the obligor detailing the alleged error." *Maranto v. CitiFinancial Retail Servs., Inc.*, 448 F. Supp. 2d at 760-61 (quoting 15 U.S.C. § 1666(a)). "Section 1637(b)(10) in turn provides that the billing statement which is sent at the end of each billing cycle must include the address to be used by the creditor for the purpose of receiving billing inquiries from the obligor." *Maranto*, 448 F. Supp. 2d at 761 (citing 15 U.S.C. § 1637(b)(10)). This same requirement is expressly set forth in Reg. Z -- 12 C.F.R. § 226.13(b) defines a "billing error notice" as "a written notice from a consumer that: (1) Is received by a creditor at the address disclosed under § 226.7(k) no later than 60 days after the creditor transmitted the first periodic statement that reflects the alleged billing error …." (Footnotes omitted); *see also* 12 C.F.R. § 226.7(k) (stating that the billing statement must include "[t]he address to be used for notice of billing errors."). "Accordingly, for Section 1666 to be triggered, the creditor must receive written notice at the address specified in the billing statement." *Maranto*, 448 F. Supp. 2d at 761.

The decision in *Maranto* illustrates the strict application of these rules. There, plaintiff, a victim of identity theft, sued CitiFinancial claiming that it had failed to satisfy its obligations under the FCBA after receiving written notices disputing the account at issue. *Maranto*, 448 F. Supp. 2d at 759. Plaintiff claimed that he had mailed written dispute notices to CitiFinancial at P.O. Box 22066,

---

*Milhollin*, 444 U.S. 555, 557, 565 (1980); *see also Household Credit Servs., Inc. v.*

Tempe, Arizona, 85285-2060. *Id.* That address, however, was different from the address on the front of the billing statement. Thus, the court reasoned, "in order to trigger its Section 1666 obligations, CitiFinancial would have to receive written notice of alleged billing errors at Post Office Box 22060." *Id.* Because the Maranto plaintiff sent his written notices to a different P.O. Box than the P.O. Box specified in his billing statement, the court rejected his FCBA claim as a matter of law. *Id.*

Here, Plaintiff fails to allege that she submitted an written dispute to an address on a billing statement for the Account. To the contrary, Plaintiff maintains that her dispute was predicated based on information contained in a credit report, not a billing statement. The FCBA, by its own language, is not amenable to such a claim as a matter of law.

Accordingly, because Plaintiff does not, and cannot, plead the basic factual elements necessary to assert a claim under the FCBA (a written dispute sent to an address set forth on a billing statement regarding an alleged error in such statement), Citibank's obligations under the FCBA were never triggered for the Account. As a result, Citibank cannot be held liable for violating the FCBA as a matter of law.

---

*Pfennig*, 541 U.S. 232, 242-45 (2004).

### III. CONCLUSION

For the foregoing reasons, Citibank respectfully requests that the Court grant this Motion and dismiss Plaintiff's claims as against Citibank with prejudice and without leave to amend.

Respectfully submitted,

**s/ Joan P. Depfer, Esquire / jdepfer**
Joan P. Depfer, Esquire
Marshall, Dennehey, Warner,
Coleman & Goggin
1845 Walnut Street
Philadelphia, PA  19103
(215) 575-4559

**Attorney for Defendant**
Citibank (South Dakota), N.A., incorrectly identified as Citigroup Inc., d/b/a THD/Citibank USA

DATED: March 7, 2011